Filed 4/3/23  P. v. Rogers CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN SPENCER ROGERS,<br><br>    Defendant and Appellant. | B319685<br><br>(Los Angeles County<br>Super. Ct. No. YA023373) |

APPEAL from order of the Superior Court of Los Angeles County, Hector M. Guzman, Judge.  Affirmed.

Shannon Chase, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel C. Chang and John Yang, Deputy Attorneys General for Plaintiff and Respondent.

—————————

In 1996 a jury convicted John Rogers of the first degree murder of Vina Johnson, the attempted willful, deliberate, and premeditated murders of Ronald Gardner, Rodney Walker, and Duane Morgan, three counts of first degree robbery, and first degree burglary. The jury found true the special circumstance that the murder was committed while Rogers was engaged in a robbery. The jury also found true Rogers personally used a firearm and a principal was armed in the commission of the offenses. Rogers appealed, and this court affirmed. (*People v. Rogers* (Sept. 2, 1997, B103451) [nonpub. opn.] (*Rogers I*).)

In 2022 Rogers, representing himself, filed a petition for resentencing seeking to vacate his murder conviction and be resentenced pursuant to Penal Code former section 1170.95 (now section 1172.6).[1] The superior court summarily denied Rogers's petition without appointing counsel on the basis Rogers was ineligible for resentencing as a matter of law because he was the actual killer.

On appeal, Rogers argues the superior court erred in failing to appoint counsel after it found his petition was facially sufficient and in determining Rogers was ineligible for relief as the actual killer. The People contend that even if the court erred in denying Rogers's petition without appointing counsel, any error was harmless because the record of conviction conclusively established Rogers was the actual killer and therefore ineligible for relief. We agree the court's error in summarily denying Rogers's petition for resentencing was harmless because the record of conviction shows he was the actual killer. We affirm.

---

[1] Effective June 30, 2022, Penal Code section 1170.95 was renumbered as section 1172.6 with no change in the text. (Stats. 2022, ch. 58, § 10.) Further statutory references are to the Penal Code.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Killing[2]*

On February 26, 1995 Gardner and his cousin Walker were in their apartment in South Los Angeles with their friend Morgan and Johnson, a maid. At about 7:00 p.m. Rogers, who was known to Gardner and Walker as "Baby Nut," and another man whom Gardner and Walker did not know, arrived at the apartment.[3]

After sitting around for a short period of time, Rogers and the other man pulled out guns and ordered Gardner and Walker into the kitchen, where Johnson was. Rogers ordered Gardner to bind Walker's ankles and wrists with duct tape, and then Johnson to bind Gardner. Meanwhile, the other man went into the bathroom where Morgan was showering and ordered him into the kitchen. Morgan put on his boxer shorts, and Johnson bound him with duct tape, as ordered. Johnson then lay down on the kitchen floor next to Gardner, Walker, and Morgan. While one of the men stood guard, the other went through the apartment, taking money and jewelry. Rogers and the other man also took

_____

[2]    We provide a recitation of the facts from the trial as set forth in *Rogers I, supra*, B103451 only for background, as does Rogers. Because we hold the jury instructions and verdicts establish that Rogers was convicted as Johnson's actual killer, we do not reach his contention that the superior court erred in relying on the factual recitation in *Rogers I* to find he was the actual killer.

[3]    The amended felony complaint, filed June 6, 1995, charged Cedric Duane Byrd as Rogers's codefendant on all counts.

car keys from Gardner and Walker, and the other man left the apartment, and drove away in Gardner's car.

Rogers began to leave, then returned to the kitchen and said he had to kill all of them. Rogers shot Johnson in the head. Gardner jumped up and hopped toward the kitchen back door. Rogers shot at him but missed. Gardner scaled a neighbor's fence, and the neighbor called the police. Morgan heard the two shots and then a clicking noise that sounded like Rogers's gun had jammed. Morgan got up and fled the residence, then called 911. Johnson died from a gunshot wound to her head.

B.     *Rogers's Conviction and Appeal*

The jury convicted Rogers of the first degree murder of Johnson (§ 187, subd. (a)) and found true the special allegation that the murder was committed while Rogers was engaged in a robbery (§ 190.2, subd. (a)(17)). The jury also found true that Rogers personally used a firearm (a handgun) (§ 12022.5, subd. (a)) and that a principal was armed with a firearm in the commission of the murder (§ 12022, subd. (a)(1)). The jury also found Rogers guilty of three counts of first degree robbery (of Gardner, Walker, and Morgan) (§ 211). Further, the jury found Rogers guilty of three counts of attempted willful, deliberate, and premeditated murder with respect to Gardner, Walker, and Morgan (§§ 187, subd. (a), 664). Finally, the jury found Rogers guilty of first degree residential burglary (§ 659). The jury found the firearm allegations true as to the three robbery counts, three attempted murder counts, and first degree residential burglary.

The trial court sentenced Rogers to an aggregate state prison term of life without the possibility of parole, plus three consecutive life terms, plus 23 years four months.

4

Rogers appealed his conviction, and this court affirmed in *Rogers I, supra*, B103451.

C.      *Rogers's Petitions for Resentencing*

On August 9, 2021 Rogers, representing himself, filed a petition for resentencing under former section 1170.95 seeking to vacate his murder conviction. In the petition, Rogers argued the trial court instructed the jury "on the now impermissible felony murder theory," and the jury convicted him of first degree murder on that basis. Rogers requested the court appoint an attorney to represent him. Rogers attested in his supporting declaration that "[t]he jury found that I used a gun . . . and the special circumstance that the murder occurred during a robbery." Rogers attached excerpts of the trial transcript (including the jury instructions and prosecutor's closing argument) and the printed jury instructions.

The superior court reviewed the petition and appointed counsel for Rogers. The People opposed the petition on the ground Rogers was the actual killer and therefore ineligible for resentencing. The People attached to their response this court's opinion in *Rogers I, supra*, B103451, the printed jury instructions, and the jury verdict forms.

On November 10, 2021 Rogers, represented by counsel, withdrew the petition without prejudice. In an attached, signed consent form, Rogers stated he had been advised by his attorneys "that they do not think I am eligible for relief. . . ." On November 10 the superior court granted Rogers's request to withdraw the petition.

On March 8, 2022 Rogers, representing himself, filed a second petition for resentencing under former section 1170.95

5

again seeking to vacate his murder conviction and requesting the court appoint an attorney to represent him. Rogers's second petition and supporting declaration were substantially the same as his first petition. He attached excerpts of the trial transcript, the written jury instructions, and this court's opinion in *Rogers I, supra,* B103451.

On March 14, 2022 the superior court summarily denied Rogers's second petition without appointing counsel, finding Rogers was ineligible for resentencing as a matter of law because he was the actual killer. The court found the second petition, like the first, was facially valid. However, there was "no question that [Rogers] is legally ineligible for relief" under former section 1170.95 because "[a] review of the court file, the Court of Appeal[']s decision on the case, [and] the verdict forms contained in the court file, indicate that Rogers was the actual killer who shot the victim to death. The jury was not instructed on the natural or probable consequences theory of liability. The only plausible theory of liability is that Rogers intended to kill the victim . . . ." Moreover, the court explained, "[Rogers] alleges and concedes, as he did in the first petition, that he was found guilty of murder and the special circumstance allegation that the murder occurred during a robbery. [Rogers] also concedes that the jury found that he used a gun during the murder. The record of conviction supports these concessions." The court stated it was aware of the ruling in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*) and the requirement to appoint counsel upon the filing of a facially sufficient petition, but the court concluded that appointing counsel would be a "wasteful exercise in futility." The court reasoned, "There must be an impossibility exception to the apparent rule requiring the appointment of counsel in every case

6

in which a petition is facially valid, especially because counsel was appointed in the first 1170.95 filing."

Rogers timely appealed.

## DISCUSSION

A. *Senate Bill 1437 and Section 1172.6 (Former Section 1170.95)*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707-708; *Lewis, supra*, 11 Cal.5th at p. 957; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848 (*Gentile*).) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder except under the revised felony-murder rule as set forth in section 189, subdivision (e). That section requires the People to prove specific facts relating to the defendant's individual culpability: The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of the murder (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life "as described in subdivision (d) of Penal Code Section 190.2," the felony-murder special-circumstance provision (§ 189, subd. (e)(3)). (See *Strong*, at p. 708.)

7

Senate Bill 1437 also provided a procedure (now codified in section 1172.6) for an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189. (*Lewis, supra*, 11 Cal.5th at p. 959; *Gentile, supra*, 10 Cal.5th at p. 847.)

If the section 1172.6 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief based on the requirements of subdivision (a), the court must appoint counsel to represent the petitioner upon his or her request pursuant to section 1172.6, subdivision (b)(3). Further, upon the filing of a facially sufficient petition, the court must direct the prosecutor to file a response to the petition and permit the petitioner to file a reply, and the court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (See § 1172.6, subd. (c).) Where a petitioner makes the requisite prima facie showing he or she falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c) & (d)(1).)

"In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis, supra*, 11 Cal.5th at p. 972.) Rather, at the prima facie review stage, the court's review is limited to "'readily ascertainable facts'" in the record, such as the jury instructions,

8

the record of the crimes committed, and jury findings on the enhancements. (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815; see *People v. Harden* (2022) 81 Cal.App.5th 45, 50 (*Harden*) [considering jury instructions and verdicts to determine whether the record of conviction conclusively established that defendant was actual killer]; *People v. Ervin* (2021) 72 Cal.App.5th 90, 106 [considering as part of record of conviction the jury instructions, closing arguments, and verdicts, which did not show defendant was ineligible for relief based on jury's true findings on felony-murder special-circumstance allegation].)

B. *The Superior Court's Error in Denying Rogers's Petition for Resentencing Without Appointing Counsel Was Harmless*

1. *The superior court erred in failing to appoint counsel*

Rogers contends the superior court erred in summarily denying Rogers's second petition for resentencing without appointing counsel after finding Rogers filed a facially sufficient petition. Rogers is correct. As discussed, under section 1172.6, subdivision (b)(3), once a petitioner files a facially sufficient petition and requests appointment of counsel, the superior court must appoint counsel before performing a prima facie review under section 1172.6, subdivision (c). (See § 1172.6, subd. (b)(3) ["Upon receiving a petition in which the information required by this subdivision is set forth . . . , if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner."]; *Lewis, supra*, 11 Cal.5th at p. 963 [petitioners "are to receive counsel upon filing of a compliant petition"].) There is no "impossibility exception" to the statutory requirement that counsel be appointed, as found by the superior court, nor is it appropriate for a court to conclude absent counsel that

9

appointment of counsel would be futile. The trial court therefore erred in denying Rogers's petition for resentencing without first appointing counsel.

> 2.  *The error in failing to appoint counsel was harmless*

Failing to appoint counsel for a petitioner at the prima facie review stage is state law error only, reviewable for prejudice under the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis, supra*, 11 Cal.5th at pp. 957-958, 973-974.) As the *Lewis* court explained, "[A] petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing.""" (*Id.* at p. 974.)

Rogers contends that although the jury was not instructed on the natural and probable consequences doctrine, it was instructed on felony murder, and therefore the jury could have imputed malice based on Rogers's intent to commit the robberies, which would no longer support his murder conviction. The People counter that the jury instructions and the verdicts show Rogers was convicted as Johnson's actual killer, and therefore the felony murder doctrine remains a valid basis for his conviction. (See § 189, subd. (e)(1) ["A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer."]; *Gentile, supra*, 10 Cal.5th at p. 842; *Harden, supra*, 81 Cal.App.5th at p. 53 ["defendants convicted of felony murder are not eligible for relief if they were the actual killer"].) The People are correct.

The jury was instructed with CALJIC No. 8.10 that "every person who unlawfully kills a human being with malice aforethought, or during the commission or attempted commission of a robbery, a felony inherently dangerous to human life, is guilty of [the] crime of murder." No instruction was given on aiding and abetting. For example, as the People point out, the trial court did not instruct with CALJIC No. 3.01 on general principles of aiding and abetting, nor did the court instruct with former CALJIC No. 8.27 on aiding and abetting first degree felony murder. Further, in instructing the jury on the robbery-special-circumstance allegation using CALJIC No. 8.80.1, the court omitted the portion of the form instruction addressing circumstances in which a jury may return a true finding if the defendant is not the actual killer.[4] Therefore, nothing in the jury

[4] The 1993 revision of CALJIC No. 8.80.1 included the following optional language, which was not given: "If you find that a defendant was not the actual killer of a human being, [or if you are unable to decide whether the defendant was the actual killer or [an aider and abettor] [or] [co-conspirator],] you cannot find the special circumstance to be true [as to that defendant] unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill [aided,] [abetted,] [counseled,] [commanded,] [induced,] [solicited,] [requested,] [or] [assisted] any actor in the commission of the murder in the first degree] [.] [, or with reckless indifference to human life and as a major participant, [aided,] [abetted,] [counseled,] [commanded,] [induced,] [solicited,] [requested,] [or] [assisted] in the commission of the crime of [qualifying offense] which resulted in the death of a human being, namely [qualifying offense]."

The trial court also did not instruct the jury with the following language in CALJIC No. 8.80.1: "[I]f you are satisfied beyond a

11

instructions advised the jury it could convict Rogers of murder based on his participation in a robbery if he was not the actual killer.

*Harden, supra*, 81 Cal.App.5th 45 is directly on point. There, as here, the trial court instructed the jury on felony murder, but not the natural and probable consequences doctrine. (*Id*. at p. 53.) Further, "the jury was not instructed that it could convict Harden as an aider and abettor, accomplice, or as a major participant in the burglary and robbery who acted with reckless indifference to human life." (*Ibid*.) And, as here, the court instructed the jury on murder with CALJIC No. 8.10 and a portion of CALJIC No. 8.80.1 that excluded the optional aiding and abetting language. (*Id*. at p. 54.) The court highlighted that the language in CALJIC No. 8.10 defining when a person is guilty of murder referred to a "'person who unlawfully *kills* a human being,'" which "'[i]n common understanding . . . would refer to the person who inflicted the fatal injury.'" (*Id*. at pp. 54-55.) In light of these and the other instructions (and the omission of any aiding and abetting instructions), the court concluded "no juror could have voted to convict Harden as anything other than being the actual killer." (*Id*. at p. 54.)

Rogers argues the jury was not instructed that it could only convict Rogers of felony murder if he was the actual killer because CALJIC No. 8.10 allowed the jury to convict him of murder if the killing occurred in the commission or attempted commission of a robbery, without a finding he was the actual killer, acted with the intent to kill, or was a major participant

reasonable doubt that the defendant actually killed a human being, you need not find that the defendant intended to kill in order to find the special circumstance to be true."

who acted with reckless indifference to human life. But CALJIC No. 8.10, as instructed, did not provide a path to convict Rogers based on aiding and abetting liability. The fact the jury was not asked to make an express finding Rogers was the actual killer does not support an inference the jury found he was not the actual killer where there was no other theory of conviction under the court's instructions.

Because the jury necessarily found Rogers was the actual killer when it convicted him of first degree murder, he was convicted of murder under a still-valid theory under sections 188 and 189, as amended by Senate Bill 1437. Therefore, the superior court's error in failing to appoint counsel was harmless. (See *People v. Mancilla* (2021) 67 Cal.App.5th 854, 864 [error in not appointing counsel before denying facially sufficient petition was harmless because defendant was convicted under a theory of liability not affected by Senate Bill 1437].)[5]

---

[5] In his reply brief, Rogers requests that on remand the superior court rule on his eligibility for resentencing with respect to his convictions for the attempted murders of Gardner, Walker, and Morgan because Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats 2021, ch. 551, sec. 2), effective January 1, 2022, extended sentencing relief to defendants convicted of "attempted murder under the natural and probable consequences doctrine." (See § 1172.6, subd. (a).) Because Rogers did not include attempted murder in his petition for relief, which was filed on March 8, 2022 (after the effective date of Senate Bill No. 775), the superior court did not err in not addressing Rogers's convictions for attempted murder. Moreover, as discussed, the jury was not instructed on the natural and probable consequences doctrine.

## DISPOSITION

The order denying Rogers's petition for resentencing is affirmed.

FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.